T.C. Memo. 2016-172

UNITED STATES TAX COURT

BONITA L. PERRY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28661-14.                          Filed September 14, 2016.

Bonita L. Perry, for herself.

<u>Kristina L. Rico</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (referred to here as the "IRS") issued

a notice of deficiency to the petitioner, Bonita L. Perry, for the 2011 tax year

determining an income-tax deficiency of $15,949 and an accuracy-related penalty

[*2] under section 6662(a) of $3,190.[1]  Perry timely filed a petition under section 6213(a) for redetermination of the deficiency and penalty.[2]  We have jurisdiction under section 6214(a).

Perry concedes she is liable for the deficiency.  The only remaining issue for resolution is whether she is liable for an accuracy-related penalty under section 6662(a) on the basis of a substantial understatement of income tax under subsection (b)(2).  We hold that she is liable.

## FINDINGS OF FACT

Some facts are stipulated, and they are so found.

Perry was a teacher in the School District of Philadelphia.  Perry has a master's degree in education administration with four certifications:  (1) a principal certification, (2) a special education supervisory certification, (3) an elementary certification, and (4) a special education teaching certification.  Perry has not taken any accounting or tax courses.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.  All dollar amounts are rounded to the nearest dollar.

[2]Perry resided in Pennsylvania when she filed her petition.  Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Third Circuit, see sec. 7482(b)(1), unless the parties designate the Court of Appeals for another circuit, see id. para (2).

[*3]   Perry retired from full-time teaching in 2010.  She continues to work as a consultant and substitute teacher.

During 2011, Perry withdrew a total of $96,000 from an individual retirement account, or IRA, held by Freedom Credit Union.  For each withdrawal, Perry completed a Form 2306T, "Traditional IRA Withdrawal Instruction".  On each Form 2306T, Perry checked a box next to "DO NOT WITHHOLD 10% federal income tax from this payment".  The box was directly above her signature.  Perry received a Form 1099-R, "Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.", for the 2011 tax year from Freedom Credit Union.  This Form 1099-R indicated that the entire $96,000 that she had received from Freedom Credit Union in 2011 was taxable and that no amount had been withheld for federal income tax.

In 2011, Perry also withdrew a total of $58,255 from a pension retirement account held by the Pennsylvania Public School Employees' Retirement System ("PSERS").  Perry received a Form 1099-R for the 2011 tax year from PSERS reporting that the entire $58,255 she received from PSERS in 2011 was taxable and that of this amount, $8,313 had been withheld for federal income tax.

**[\*4]**   In total, Perry received taxable retirement distributions from her IRA and her pension of $154,255 in 2011.[3]

Perry testified that she consulted with two unnamed financial advisers regarding her retirement assets (i.e., the Freedom Credit Union IRA and the PSERS pension).  She testified she consulted with them in December 2010 or January 2011.  This was before she received any of her 2011 retirement distributions, all of which were made after January 2011.

Perry testified that the advisers told her that she could report half of the total retirement distributions that she planned to receive in 2011 on her 2011 tax return

---

[3]Neither party disputes the taxability for the 2011 tax year of the entire amount of the retirement distributions that Perry received from her IRA with Freedom Credit Union in 2011 and her pension with the PSERS in 2011.  With certain exceptions, none of which apply in this case, any amount paid or distributed out of an IRA, such as Perry's IRA with Freedom Credit Union, is included in gross income by the payee or distributee in the year paid or distributed (and therefore taxable in such year) as provided under sec. 72 (relating to annuities).  See secs. 408(d)(1), 7701(a)(37).  In addition, with certain exceptions, none of which apply in this case, a distribution from a qualified employer retirement plan, such as Perry's pension with the PSERS, is taxable to the distributee in the year distributed as provided under sec. 72 (relating to annuities).  Sec. 402(a)(1); see sec. 72.  Under sec. 72, amounts are fully includible in gross income if the taxpayer did not make any pretax contributions to the investment.  See sec. 72(b)(1), (2), (4), (d).  It appears that Perry did not make any pretax contributions to the IRA with Freedom Credit Union or her pension with the PSERS.  Accordingly, all the distributions that Perry received from her IRA with Freedom Credit Union in 2011 and from her pension with the PSERS in 2011 are taxable to her for the 2011 tax year.

[*5] and the remainder on her 2012 tax return. She testified that one of the advisers was in Huntington Valley, Pennsylvania, and the other was in Jenkintown, Pennsylvania.

Perry does not know whether either of the two financial advisers was a pension expert or a tax adviser. Perry does not remember whether these financial advisers told her which provision of the tax laws would permit Perry to report half of the retirement distributions that she planned to receive in 2011 on her 2011 tax return and the remainder on her 2012 tax return. We find that Perry did consult with two financial advisers before she began receiving retirement distributions in 2011.

Perry prepared her 2011 tax return with the help of her husband and the computer program TurboTax. She did not seek the advice of any pension expert or tax adviser.

On September 3, 2012, Perry timely filed her Form 1040, "U.S. Individual Income Tax Return", on extension, for the 2011 tax year. On this return, Perry reported that the taxable amount of IRA distributions was zero and that the taxable amount of pension income was $97,313, a total tax owed of $18,035, withholding credits and other payments of $12,202, and a tax liability of $5,876. Perry had the Form 1099-R from PSERS (which reflected a total taxable distribution of $58,255)

[*6] and the Form 1099-R Freedom Credit Union (which reflected a total taxable distribution of $96,000) when she prepared this return. Perry attached the Form 1099-R from PSERS to this return but not the Form 1099-R from Freedom Credit Union. The record does not explain how Perry arrived at the $97,313 amount of taxable pension income that she reported on her return. However, both Perry and the IRS agree that in reporting the $97,313, Perry attempted to report some combination of the retirement distributions that she received from PSERS and Freedom Credit Union in 2011. Of the retirement distributions she received from PSERS and Freedom Credit Union, totaling $58,255 + $96,000 = $154,255, Perry failed to report $56,942 on her 2011 tax return.

Sometime after September 3, 2012, the IRS began an examination for Perry's 2011 tax year.

On October 7, 2013, the IRS issued to Perry a Notice CP2000, "Notice of Underreported Income", for the 2011 tax year, proposing a tax deficiency of $15,949. The proposed tax deficiency of $15,949 stemmed from the IRS's determination that Perry had received a total of $154,255 of taxable retirement income in 2011 but had reported only $97,313. The $154,255 amount was composed of $96,000 from Freedom Credit Union and $58,255 from PSERS. The difference between the proposed amount of taxable retirement income, $154,255,

[*7] and the amount shown on Perry's return, $97,313, is $56,942. The Notice CP2000 refigured Perry's total tax for 2011 to be $33,984, which was $15,949 greater than the $18,035 tax shown on Perry's original 2011 tax return.

On March 7, 2014, after receiving the Notice CP2000 dated October 7, 2013, and therefore after having been notified of the IRS's examination of her 2011 tax year, Perry filed a Form 1040X, "Amended U.S. Individual Income Tax Return", for 2011. On her amended 2011 tax return, Perry reported a net increase in taxable income of $56,942 attributable to "rollover at 15a and 16a" and an increase in tax liability from $18,035 to $35,665. Perry did not make any tax payments with the filing of her amended return or at any later time. The IRS received Perry's amended 2011 tax return sometime after March 7, 2014, but did not process it.

On June 2, 2014, the IRS issued a second Notice CP2000 to Perry for the 2011 tax year. This letter indicated that the IRS had received Perry's amended 2011 tax return in response to the IRS's previous Notice CP2000. However, the letter reflected that the taxable retirement income shown on Perry's return was still $97,313, the amount shown on Perry's original return. This Notice CP2000 again proposed a tax deficiency of $15,949.

[*8]   On September 2, 2014, the IRS issued to Perry a notice of deficiency for the 2011 tax year on the basis of Perry's original 2011 tax return.  In the notice of deficiency, the IRS determined an income tax deficiency of $15,949 and an accuracy-related penalty of $3,190 attributable to a substantial understatement of income tax.[4]

Trial began on September 16, 2015.  The Court recessed at the end of that day, granting permission to Perry to return to Court on September 18, 2015, with any documentary evidence that she had that might corroborate the identity of the two financial advisers or the advice they gave her.  Perry failed to appear in Court or produce any such evidence on September 18, 2015.

## OPINION

The deficiency is based on Perry's failure to report $56,942 of retirement distributions on her original 2011 tax return.  Perry admits that she failed to report $56,942 of retirement distributions for 2011.  Perry concedes she is liable for the $15,949 deficiency.  Thus, the only issue in dispute is whether Perry is liable for an accuracy-related penalty under section 6662(a) and (b)(2) for a substantial understatement of income tax for the 2011 tax year.

---

[4]During trial, the IRS reaffirmed that "the assertion of the accuracy-related penalty under 6662 is for substantial understatement of tax only, a computational adjustment.  It is not about negligence."

[*9]   An underpayment is defined generally as the difference between the tax imposed and the tax reported on the tax return.  Sec. 6664(c).  Section 6662(a) imposes a 20% penalty on an underpayment of tax that is attributable to any of the causes listed in subsection (b).  These causes include "[a]ny substantial understatement of income tax."  Sec. 6662(b)(2).

The first component of an underpayment is the tax imposed.  Sec. 6664(a).  In the notice of deficiency, the IRS determined that the tax imposed was $33,984.  Perry does not challenge this aspect of the notice of deficiency.

The second component of an underpayment is the tax reported on the tax return.  Id.  Perry appears to argue that her amended 2011 tax return, as opposed to her original 2011 tax return, should be used to determine her underpayment for purposes of section 6662(a).  The tax reported on Perry's original return was $18,035.  The tax reported on Perry's amended return was $35,665.  In calculating an underpayment, the tax reported on the tax return is the tax reported on the original return, unless the taxpayer filed a "qualified amended return",  in which case it is the tax reported on the amended return.  Sec. 1.6664-2(c)(2), Income Tax Regs.  A "qualified amended return" is an amended return that is filed before "[t]he date the taxpayer is first contacted by the Internal Revenue Service concerning any examination * * * [of] the return".  Id. subpara. (3)(i).  Because

[*10] Perry filed her amended 2011 tax return after she was notified by the IRS of the examination for her 2011 tax year, her amended 2011 tax return is not a "qualified amended return", and therefore it cannot be used to determine her underpayment for purposes of section 6662(a).

The tax imposed for Perry's 2011 tax year is $33,984. The tax reported on Perry's original 2011 tax return is $18,035. Perry's underpayment for the 2011 tax year is $33,984 – $18,035 = $15,949. See sec. 6664(a).

An understatement of income tax is the amount of the tax required to be shown on the return minus the amount of the tax imposed which is shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is substantial if (1) the understatement exceeds 10% of the tax required to be shown on the return and (2) the understatement exceeds $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs. The tax required to be shown on Perry's original 2011 tax return is $33,984. The tax shown on the return is $18,035. Perry's understatement for the 2011 tax year is $33,984 – $18,035 = $15,949. See sec. 6662(d)(2)(A). Ten percent of the tax required to be shown on Perry's original 2011 tax return is $3,398. The understatement of $15,949 exceeds 10% of the tax required to be shown on the return, $3,398. It also exceeds $5,000. Perry had an underpayment

**[*11]** of $15,949 for the 2011 tax year that was due to a substantial understatement of income tax.

Perry's last argument is that her failure to report the $56,942 of her retirement distributions on her 2011 tax return was due to reasonable cause and was not due to willful neglect. Section 6664(a) provides that no penalty is imposed under section 6662 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Perry argues that she acted with reasonable cause by relying on the financial advisers, who allegedly told her that she could report half of the retirement distributions that she received from PSERS and Freedom Credit Union in 2011 on her 2011 tax return and the remainder on her 2012 tax return. The taxpayer bears the burden of proving that the penalty is inappropriate because the taxpayer acted with reasonable cause and in good faith. Higbee v. Commissioner, 116 T.C. 438, 447 (2001). Regulations provide that reasonable cause and good faith are determined on a case-by-case basis, taking into account all pertinent facts and circumstances:

> Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and

**[*12]** education of the taxpayer. * * * Reliance on * * * professional advice
* * * constitutes reasonable cause and good faith if, under all the
circumstances, such reliance was reasonable and the taxpayer acted in
good faith. * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.  To establish reasonable cause and good

faith through reliance on professional advice the taxpayer must show that "(1)

[t]he adviser was a competent professional who had sufficient expertise to justify

reliance, (2) the taxpayer provided necessary and accurate information to the

adviser, and (3) the taxpayer actually relied in good faith on the adviser's

judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000),

aff'd, 299 F.3d 221 (3d Cir. 2002).  To satisfy the third test, the taxpayer must

show that the tax professional "opine[d] on the legitimacy" of the aspects of the

return that were challenged by the IRS.  Id. at 100.

Perry's argument that she reasonably relied on the advice of the two

financial advisers in preparing her 2011 tax return is not persuasive.  First, Perry

does not allege, and did not prove, that her two financial advisers were sufficiently

experienced in federal tax law to give her advice regarding the reporting

requirements of the retirement distributions she received in 2011.  Second, Perry

did not prove that she told the advisers that she would receive total retirement

distributions of $154,255 in 2011 and that no amount of these distributions would

[*13] be rolled over into a Roth IRA. Thus, she failed to prove that she gave necessary and accurate information to the advisers. Third, Perry failed to prove that the two financial advisers actually opined on the legitimacy of the reporting that Perry ended up making of the retirement distributions she received in 2011 on her 2011 tax return. The advice given to Perry meets none of the three tests for establishing reasonable cause and good faith through reliance on professional advice. Under the circumstances, Perry has failed to satisfy her burden of proof. We conclude that Perry did not act with reasonable cause and in good faith in failing to report $56,942 of the retirement distributions that she received in 2011 on her original 2011 tax return.

For the foregoing reasons, we hold that Perry is liable for, and has not established a defense to, the section 6662(a) accuracy-related penalty for 2011.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for

respondent.